SMITH v. SMITH *et al., Appellants.*

Division Two, March 3, 1896.

1. **Practice:** DEFENDANT'S SICKNESS: CONTINUANCE. Refusal of a continuance, because of the absence of defendant, claimed to be caused by his sickness, will not be disturbed on appeal, where no effort was made to have a physician certify to his sickness, or to take his deposition, though he lived in the town in which the trial occurred and claimed he had been sick for three months.

2. ———: ———: ———. The discretion of the trial court in refusing and granting continuances will not be interfered with on appeal, unless it is clear such discretion has been abused.

3. **Quieting Title:** FORGERY. Evidence in a suit to quiet title examined and *held* sufficient to support a decree for plaintiff on the ground that the defendant had forged a deed as to the land in suit.

*Appeal from Buchanan Circuit Court.*—HON. H. M. RAMEY, Judge.

AFFIRMED.

*H. K. White* and *S. S. Brown* for appellants.

(1) The court below erred in refusing to grant a continuance upon the application of defendant, T. M. Smith. His attorneys stated in their motion that his presence was essential to properly advise in the examination and cross-examination of witnesses. *First.* The supreme court has the right to review the discretion of trial courts in refusing applications for a continuance. *State v. Maddox,* 117 Mo. 667; *State v. Anderson,* 96 Mo. 241. *Second.* As a party to the suit, charged with an offense of a criminal character, he should have been given the opportunity to be present to protect not only his property rights but his character. *Welcome v. Boswell,* 54 Ind. 299; *Matthews v. Willoughby,* 11 S. E. Rep. 620; s. c., 65 Ga. 839; *Jaffe v. Linenthal,* 35 Pac. Rep. (Col.) 636; *Kitchen v. Hutchins,* 44 Ga. 620. (2) Upon all the testimony, the decree in this case ought to have been for defendants. This case being an equity case and all the evidence being preserved in the record, the supreme court will examine the whole record, substantially trying it *de novo* and will reverse the judgment rendered below if not satisfied of its correctness. *Blount v. Spratt,* 113 Mo. 48; *Draston v. Mueller,* 103 Mo. 624; *Fulkerson v. Sappington,* 104 Mo. 472; *Bell v. Campbell,* 123 Mo. 1.

*James W. Boyd* and *Thomas F. Ryan* for respondent.

(1) The action of the circuit court in overruling appellants' application for a continuance was preeminently proper. *First.* The application is defective. It presents no reasonable grounds for a continuance. *Second.* The case had been pending since September 2, 1892. Two

terms of the court had elapsed; what occurred in the meantime was known to the circuit court, and that court knew from all the facts in the case that the appellants were not entitled to a continuance. *Third.* Every presumption will be indulged in favor of the ruling of the circuit court in refusing a continuance. *Leabo v. Good*, 67 Mo. 126; *State v. Jewell*, 90 Mo. 467; *Steele v. Baily*, 94 Mo. 311; *Solomon v. State*, 14 S. Rep. 461; *LaBouisse v. Mfg. Co.*, 9 S. Rep. 492; *Waarich v. Winter*, 33 Ill. App. 36. (2) The evidence in this case clearly shows that Thomas M. Smith forged the deed in controversy, so far as the home place is concerned; or, in other words, that after the deed was executed, he added thereto a description of lot (8) in block (36) in Smith's addition to the city of St. Joseph, Missouri, and thereby undertook to deprive Mrs. Smith of her home. The evidence tending to show this fact is so clear, forcible, and cogent as to be practically undisputed; hence the decree of the circuit court was preeminently right and proper.

GANTT, P. J.—Mrs. Jane E. Smith, the widow of Otho M. Smith, sues to remove a cloud from her title to lot 8, in block 36, in Smith's addition to the city of St. Joseph, Missouri. This lot is located on Tenth street in said city, and was the home of Otho M. Smith, now deceased, and his wife, now his widow, Jane E. Smith, for many years. It was known as the home place. He died in 1883, and upon his death the plaintiff became owner of the said lot 8, in block 36, in Smith's addition to the city of St. Joseph, Missouri.

There was a strip of ground twenty feet wide on the south side of lot 7—next lot north of 8—which Mrs. Smith was willing to give Thomas M. Smith, a nephew of her deceased husband. It was worth $2,000. The home place and the piece of property on Frederick ave-

nue was all she had, except this twenty feet and a small lot deeded to Frank Conrad, and her avenue property was mortgaged for $5,000.

She executed a deed for this twenty feet to Thomas M. Smith on May 26, 1888, and, as the property was worth $2,000, the consideration expressed in the deed is that sum. A blank form of warranty deed was used on that occasion, and that twenty feet was described therein as follows: "A strip of ground in uniform width of twenty feet off the south side of lot 7, in block 36, Smith's addition, an addition to the city of St. Joseph, Missouri." This description left a blank space in said deed, and in that blank space there was written the following: "And also all of lot 8, in block 36, Smith's addition, an addition to the city of St. Joseph, Missouri." This home place, the property last above described, was worth about $12,000 at that time. This deed was not recorded until 5:35 P. M., September 24, 1888.

Plaintiff, after sundry demands on Thomas Smith, was unable to produce the original deed on trial. He gave various contradictory and unsatisfactory statements in accounting for its loss. In an affidavit filed for a continuance he claims his desk was broken open and the deed abstracted, but to plaintiff and her counsel he said it was destroyed and he could not find it. Mrs. Smith knew nothing of this forgery until March, 1892. During the interval from 1888 to 1892 she continued to exercise ownership over the lot, *received the rent, paid the taxes, and paid for the repairs.* When Thomas Smith collected the rent for her he signed the receipt *as her agent*, and turned the money over to her.

When she learned in March, 1892, that Thomas Smith had forged this deed, or rather so much thereof as included the home place, she at once confronted him. She said: "Tom, I understand you have mort-

gaged my property." He said: "How could I mort-
gage your property? People are very busy. They
don't want anybody to succeed in this city." Then
she saw Mr. Conrad about the matter, and she and Mr.
Conrad went to the Hughes building to see Thomas
Smith, and she said: "Tom, how did you get my
property in your possession?" He says: "*Yes*, Will
was just telling me about it. I don't know." Then
they went into Mr. Boyd's office, and Mrs. Smith asked
him: "Why did you do such a thing as that! to take
my house away from me and leave me without any-
thing?" He said: "*I guess I was crazy.*"

Mr. Conrad talked to him about the same time and
asked him about signing Mrs. Smith's name to prom-
issory notes, and then asked him, "how he had gotten
Mrs. Smith's property in his possession," and Smith
said: "I don't know." Conrad says: "You ought
to know—a child could know that." Smith says: "I
was pretty green in those days, and I didn't know any
better."

Allen D. Vories, Esq., had a conversation with
Tom Smith near the time of the exposure of his con-
duct, and says, "that Tom Smith then told him that
he did not know how lot 8, in block 36, got into that
deed; that it was never the intention of Mrs. Smith to
put it in there; and he could not explain it in any
way."

Mrs. Smith's evidence tended to show in the most
satisfactory, clear, and cogent manner that she had
signed and acknowledged the deed conveying *only the
tract twenty feet wide;* that she never consented to have
her home place included in the deed; that it was not in
the deed when she executed and acknowledged it, and
that Thomas Smith had repaid her generosity in giving
him the tract twenty feet wide by fraudulently insert-
ing a description of her home place also in the blank

after the deed was executed and delivered. The notary did not remember the description, and no witness contradicted Mrs. Smith, but all the facts corroborated her. Thomas Smith was impeached as a man of general bad character for truth and veracity, to which was added the reputation of being a forger.

The circuit court rendered a decree for plaintiff and defendant appeals. Two errors are assigned: *First*, that the court erred in refusing a continuance on account of the absence of Thomas Smith himself at the trial; and, *second*, because upon the whole evidence the decree should have gone for defendants.

I. There was no error in refusing to delay the case on account of the absence of Smith. The application shows no diligence. The claim of sickness is exceedingly unsatisfactory. Living in the city of St. Joseph, where the trial was had, no effort was made to have any physician see him or certify to his illness or its character, and in his own affidavit he does not disclose his ailment. Moreover, Smith had lived in the city continuously since this suit was commenced and no effort was made by defendant to take his deposition, although he says he had been sick for three months. Outside of all this the affidavit itself is of such a character as would not have justified the court in longer delaying the case. The circuit court's discretion in granting or refusing continuances will not be disturbed unless it is made apparent that it has been abused. We are strongly impressed with the opinion that Smith was unwilling to be present and meet the charge of forgery made, and sustained, by other witnesses in the case.

As to the merits of the case, the evidence was amply sufficient to support the decree and the judgment is affirmed.    SHERWOOD and BURGESS, JJ., concur.